

# SUPREME COURT OF MISSOURI
## en banc

STATE ex rel. CLINTON NO. 1, INC.,    )
                                                )

        Relator,                    )

                                                )

v.                                                )        No. SC100099

                                                )

THE HONORABLE BRANDON BAKER,    )

                                                )

        Respondent.              )

*Opinion issued March 5, 2024*

## ORIGINAL PROCEEDING IN MANDAMUS

Clinton No. 1, Inc., ("Clinton") filed a motion to dismiss the wrongful death action Donna Yarnell filed against it. According to Clinton, Yarnell's claims were barred by the Public Readiness and Emergency Preparedness ("PREP") Act, 42 U.S.C. §§ 247d-6d and 247d-6e (2018), and two Missouri acts. The circuit court overruled the motion. Clinton sought writ relief to direct the circuit court to enter an order sustaining Clinton's motion to dismiss. This Court issued a preliminary writ of mandamus. Because Clinton's proposed theories of immunity are not implicated by Yarnell's petition, the preliminary writ of mandamus is quashed.

**Factual and Procedural Background**

Yarnell filed a wrongful death petition for damages against Clinton in the Henry County circuit court. The petition set forth the following allegations. Mary Gray, Yarnell's mother, contracted with Clinton, a healthcare and rehabilitation center, for a private room. Clinton provided medical and nursing services to Gray beginning in July 2018. In November 2020, Clinton placed Gray and a roommate together. According to Yarnell, the placement of the roommate exposed Gray to COVID, placed her at risk, and violated the agreement that Gray have a private room. As a result of the roommate placement, Gray contracted and was diagnosed with COVID. Four days after the diagnosis, Gray was sent to a hospital for evaluation and treatment. A week after the diagnosis, she died.

Yarnell alleged Clinton was negligent in placing Gray in a double room, failing to follow individualized infection control during the pandemic, failing to timely separate Gray from her COVID-infected roommate, and moving Gray to a hospital after she contracted COVID without notifying family and in contravention of her advance directives. Yarnell further alleged Clinton's acts showed a complete indifference to and conscious disregard for Gray's safety.

Clinton removed the case to federal court, arguing the federal district court had jurisdiction. Yarnell filed a motion to remand the case, which the district court sustained.[1]

---

[1] The court found the PREP Act was not a complete preemption statute. *Yarnell v. Clinton No. 1, Inc.*, 591 F. Supp. 3d 432, 439 (W.D. Mo. 2022). In addition, the court determined the PREP Act did not apply. *Id.* ("As no allegations implicating a covered countermeasure appear on the face of the Petition, the Court finds that the PREP Act does not apply to Plaintiff's state law claims.").

2

After the case was remanded to the Henry County circuit court, Clinton filed a motion to dismiss for want of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Clinton argued dismissal was appropriate pursuant to the PREP Act and two Missouri acts. Accompanying the motion to dismiss was an affidavit from Clinton's director of nursing and infection control preventionist. The affidavit averred Clinton had implemented COVID testing of residents. The facility was divided into COVID-positive and -negative wings. Creation of the resident wings caused room assignments to be changed. Those who tested negative were placed together. A resident who tested negative for COVID was placed as Gray's roommate.

The circuit court overruled the motion to dismiss after briefing and argument. Regarding the PREP Act, its order followed the federal district court's conclusion that the petition did not implicate a covered countermeasure. Consequently, the circuit court held the PREP Act did not apply. Clinton's proposed theories of immunity based on state law were also rejected.

Clinton then sought a writ of prohibition or, alternatively, mandamus. This Court issued a preliminary writ of mandamus.

**Standard of Review**

This Court has jurisdiction to issue original remedial writs pursuant to article V, section 4.1 of the Missouri Constitution. For mandamus relief to issue, "[a] litigant … must allege and prove that he has a clear, unequivocal, specific right to a thing claimed." *Furlong Cos. v. City of Kan. City*, 189 S.W.3d 157, 166 (Mo. banc 2006). "The writ will lie both to compel a court to do that which it is obligated by law to do and to undo that

3

which the court was by law prohibited from doing." *State ex rel. Planned Parenthood of Kan. & Mid-Mo. v. Kinder*, 79 S.W.3d 905, 906 (Mo. banc 2002).

## Analysis

Clinton posits Yarnell's claims are barred by three different sources: (1) the PREP Act; (2) section 44.045,[2] which addresses immunity for health care professionals deployed during a state of emergency; and (3) sections 537.1005 and 537.1010,[3] two COVID-specific liability statutes. For the following reasons, this Court concludes these laws do not warrant the dismissal of Yarnell's petition.

**The PREP Act**

Clinton argues the instant suit is covered by the statutory protections of the PREP Act. The PREP Act authorizes the secretary of health and human services to "make[] a determination that a disease or other health condition or other threat to health constitutes a public health emergency" and issue "a declaration … recommending, under conditions as the Secretary may specify, the manufacture, testing, development, distribution, administration, or use of one or more covered countermeasures." 42 U.S.C. § 247d-6d(b)(1) (2018). Once the declaration has been issued, the act provides broad liability protections: "a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting

---

[2] All references to section 44.045 are to RSMo 2016.
[3] All references to sections 537.1005 and 537.1010 are to RSMo Supp. 2022.

4

from the administration to or the use by an individual of a covered countermeasure."[4] *Id.* § 247d-6d(a)(1). At the same time, the PREP Act provides for a "Covered Countermeasure Process Fund" to compensate those "for covered injuries directly caused by the administration or use of a covered countermeasure." *Id.* § 247d-6e(a).

In March 2020, the secretary invoked the PREP Act and declared COVID to constitute a public health emergency. Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15198, 15198 (Mar. 17, 2020). Pursuant to the broad liability protection granted by the PREP Act, Clinton is entitled to immunity in this case if the following criteria are satisfied. First, Clinton must be a "covered person." *See* 42 U.S.C. § 247d-6d(a)(1). Second, the claim against Clinton must be for a "loss," which includes death. *See id.* § 247d-6d(a)(1),-6d(a)(2)(A)(i). Third, a "covered countermeasure" must have been administered or used. *See id.* § 247d-6d(a)(1). Finally, there must be a causal relationship between the administration or use of the covered countermeasure and the loss. *See id.*[5] The issue here turns on whether Gray's death was "caused by, ar[ose] out of, relat[ed] to,

---

[4] Pursuant to 42 U.S.C. § 247d-6d(d)(1), "death or serious physical injury proximately caused by willful misconduct" stands as "the sole exception to the immunity from suit and liability of covered persons." Claims under the exception are required to be brought in the United States District Court for the District of Columbia. *Id.* § 247d-6d(e)(1).

[5] In addition to the text of 42 U.S.C. § 247d-6d(a)(1), which requires immunity for "all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure," § 247d-6d(a)(2)(B) reiterates that "[t]he immunity … applies to any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure."

or result[ed] from the administration to or the use by an individual of a covered countermeasure." *See id.*[6]

A covered countermeasure is defined to be, among other things, "a qualified pandemic or epidemic product." *Id.* § 247d-6d(i)(1)(A). "Qualified pandemic or epidemic product" includes a drug, biologic product, or device that is "a product manufactured, used, designed, developed, modified, licensed, or procured … to diagnose, mitigate, prevent, treat, or cure a pandemic or epidemic." *Id.* § 247d-6d(i)(7). A COVID diagnostic test is a covered countermeasure. *See id.*

According to Clinton, Yarnell's petition alleges Clinton committed negligence while administering COVID diagnostic tests. Specifically, per Clinton, the petition alleges Clinton negligently administered COVID diagnostic tests, resulting in the placement of a COVID-positive roommate with Gray, causing Gray's death. If diagnostic tests were used to determine room placement, a causal relationship plausibly exists between the use or administration of the covered countermeasure and the death of Gray.

Yarnell's petition, however, is devoid of such circumstances. The petition alleges Clinton, in violation of its agreement with Gray and in violation of COVID procedures and protocol, placed a roommate in the same room as Gray. The petition makes no reference that the placement occurred as the result of the use or administration of a diagnostic test or any other covered countermeasure. The petition makes no reference to testing until Gray was diagnosed with COVID, which presumably was confirmed by testing. The petition

_____

[6] Because this Court ultimately concludes Yarnell's petition does not show this, the Court assumes, without deciding, that Clinton is a "covered person."

6

never asserts the roommate was diagnosed as being COVID-negative before placement with Gray.

To establish that COVID testing caused the placement of the roommate with Gray, credence must be given to the affidavit provided by Clinton's director of nursing and infection control preventionist. Clinton maintains consideration of the affidavit is appropriate at this stage. According to Clinton, the question of subject matter jurisdiction may be presented by means of affidavit on a motion to dismiss without converting it to a motion for summary judgment. *See Burns v. Emp. Health Servs., Inc.*, 976 S.W.2d 639, 641 (Mo. App. 1998) (noting a circuit court may consider affidavits, among other evidence, in determining whether it has subject matter jurisdiction). But subject matter jurisdiction refers to "the court's authority to render a judgment in a particular category of case." *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249, 253 (Mo. banc 2009). The subject matter jurisdiction of circuit courts is established in article V, section 14. *Id.* Article V, section 14 provides that "circuit courts shall have original jurisdiction over all cases and matters, civil and criminal." Under this plenary grant of subject matter jurisdiction, the circuit court had subject matter jurisdiction over the wrongful death claim.

A claim that a defendant is immune from suit is properly raised by a motion pursuant to Rule 55.27(a)(6). That rule provides the defense of failure to state a claim upon which relief can be granted can be asserted by motion. *Id.* To argue immunity applies is to argue the plaintiff failed to state a claim upon which relief can be granted. If the circuit court considers matters outside the pleadings on a motion to dismiss for failure to state a claim upon which relief can be granted, the motion must be treated as one for summary judgment,

7

and "[a]ll parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 74.04." *Id.* The rule likewise contemplates the circuit court can exclude matters outside the pleadings in such a motion. *Id.*

Here, there is no indication the circuit court considered the affidavit accompanying Clinton's motion to dismiss. The circuit court's order does not reference the affidavit, and a transcript of the hearing shows the issue of whether the court should consider material beyond the petition was contested by Yarnell. The circuit court took the issue of whether to consider the additional material under advisement. The circuit court's failure to consider the affidavit on a motion under Rule 55.27(a)(6) that was not converted to a motion for summary judgment was not error. *See id.* Absent framing from the affidavit, no covered countermeasure is implicated in the petition, and the PREP Act does not bar Yarnell's claim at this stage of litigation.

**Section 44.045**

Clinton next maintains it is entitled to immunity under section 44.045.1. That statute provides:

> Subject to approval by the state emergency management agency during an emergency declared by the governor, any health care provider licensed, registered, or certified in this state or any state who agrees to be so deployed as provided in this section may be deployed to provide care as necessitated by the emergency, including care necessitated by mutual aid agreements between political subdivisions and other public and private entities under section 44.090. During an emergency declared by the governor, health care providers deployed by the governor or any state agency shall not be liable for any civil damages or administrative sanctions for any failure, in the delivery of health care necessitated by the emergency during deployment, to exercise the skill and learning of an ordinarily careful health care provider in similar circumstances, but shall be liable for damages due to willful and wanton acts or omissions in rendering such care.

The plain language of the statute contemplates that a health care provider agrees to be deployed and that the state emergency management agency approves such agreement. *See id.* During a state of emergency declared by the governor, the governor or a state agency has the option of deploying the health care provider to provide care brought about by the emergency. *See id.*

Clinton argues it was deployed by the governor and the department of health and senior services ("DHSS") to mitigate and prevent the spread of COVID among its residents during an emergency declared by the governor.[7] In making this claim, however, Clinton fails to demonstrate it agreed to be deployed, the state emergency management agency approved such agreement, or the governor or any state agency acted on such agreement and deployed Clinton. Absent this showing, Clinton is not entitled to immunity under section 44.045.1.

**Sections 537.1005 and 537.1010**

Finally, Clinton asserts it is entitled to immunity under sections 537.1005 and 537.1010. These statutes provide liability protection in COVID-19 exposure actions and medical liability actions unless the defendant has engaged in recklessness or willful

---

[7] A state of emergency was declared March 13, 2020. Exec. Order No. 20-02 (Mar. 13, 2020). As the emergency continued, the DHSS provided a variety of guidance, recommendations, and waivers to skilled nursing facilities in general, as referenced by Clinton. This Court views such generic action by a state agency as failing even to meet the definition of "deploy" advanced by Clinton, which is to "spread out, utilize, or arrange for deliberate purpose" or "to place in battle information [sic] or appropriate positions." Inherent in both definitions is the exercise of some higher level of control over the deployed party than the mere oversight exhibited by the DHSS.

misconduct.  Sections 537.1005 and 537.1010.  Putting aside the debate of whether these statutes, which were not effective until August 28, 2021, can be applied retrospectively, this Court concludes neither statute would serve to foreclose litigation at this point.

Yarnell adequately alleged her harm was caused by Clinton's recklessness. "Recklessness" is defined as "a conscious, voluntary act or omission in reckless disregard of: (a) A legal duty; and (b) The consequences to another party."  Section 537.1000(15). Yarnell's petition alleged Clinton's acts, including placing an infected roommate with Gray in violation of her contractual agreement to be in a single room, "showed a complete indifference to and conscious disregard for the safety of [Gray]." The two COVID-19 statutes, even if they could be applied retrospectively, do not foreclose relief if Yarnell is able to prove such recklessness.

### Conclusion

For the reasons set forth above, this Court's preliminary writ of mandamus is quashed.

_____
Robin Ransom, Judge


Powell, Fischer and Broniec, JJ., concur;
Wilson, J., concurs in separate opinion filed;
Russell, C.J., and Gooch, J., concur in opinion
of Wilson, J.

10



# SUPREME COURT OF MISSOURI
## en banc

STATE ex rel. CLINTON NO. 1, INC., )
                                                  )
        Relator, )
                                                  )
v. )        No. SC100099
                                                  )
THE HONORABLE BRANDON BAKER, )
                                                  )
        Respondent. )

## CONCURRING OPINION

I concur in the principal opinion, but reluctantly so. Clinton No. 1, Inc., contends it is entitled to immunity for Donna Yarnell's claims under state and federal law. The problem is that the facts alleged in the petition do not, themselves, invoke such immunity. Instead, Clinton's immunity claims become apparent only when the director of nursing's affidavit is considered. Under our current rules, therefore, even though Clinton put that affidavit before the circuit court with its motion to dismiss, the circuit court was entitled to disregard it and overrule the motion on that basis.

No matter how justifiable the actions of the circuit court and this Court may be, the result in this matter does not serve well these parties, the efficient administration of justice, or the policy the state and federal immunity statutes were intended to promote. I write separately to suggest this Court can and should do better.

The facts set forth in the affidavit make out at least a colorable claim for federal PREP Act immunity. And, if Clinton is entitled to that immunity, it is entitled to have that issue determined at the earliest possible moment. *See, e.g.*, *State ex rel. Alsup v. Kanatzar*, 588 S.W.3d 187, 190 (Mo. banc 2019) (noting "[i]mmunity connotes not only immunity from judgment ***but also immunity from suit***" (emphasis added) (internal quotations omitted)). Here this Court sits, however, after the investment of much time, money, and effort, and the question of Clinton's immunity remains undecided.

Whose fault is this? Surely not Yarnell's, who was under no obligation to tee this issue up in the petition. Nor do I believe blame can be laid at the feet of Clinton's counsel. It clearly was foreseeable the circuit court might refuse to consider the affidavit, but Clinton's only alternative was to answer and seek resolution of this threshold issue through a motion for judgment on the pleadings or, more properly, summary judgment, neither of which promises much in the way of an early resolution. Finally, even though the better practice might have been for the circuit court ***not*** to exclude the affidavit and, instead, treat the motion to dismiss as one for summary judgment, the current version of Rule 55.27(a) gives the circuit court broad discretion and, having excluded the affidavit, the circuit court had no option but to overrule the motion. In my view, therefore, neither the parties nor the circuit court is to blame for the unnecessary delay and expense in resolving Clinton's immunity claims.

Instead, I believe what blame there is rests solely with this Court and its rules of civil procedure. Rule 55.27(a) provides that, when a motion to dismiss for failure to state a claim upon which relief may be granted is made and "matters outside the pleadings are

2

presented to ***and not excluded by the court***, the motion shall be treated as one for summary judgment[.]" (Emphasis added). Under this rule, the circuit court had broad discretion to consider the affidavit or exclude it, and Clinton does not assert in its writ petition that the circuit court abused that discretion.[1] Had the circuit court considered the affidavit, Rule 55.27(a) provides that Clinton's motion "shall" be treated as one for summary judgment and disposed of as provided in Rule 74.04. In other words, following the process set forth in Rule 74.04, Yarnell would have had to admit or deny the facts set forth in the affidavit and would be permitted to assert whatever additional undisputed facts she believes are relevant to the issues raised in Clinton's motion. Rule 74.04(a)(1)-(5). In addition, the circuit court, if it believed it necessary, could have permitted Yarnell to conduct whatever limited discovery was needed to respond properly to the facts appended to Clinton's motion. Rule 74.04(f). And, at the end of this process, the circuit court would rule on the issues presented in Clinton's motion, either granting judgment on the ground Clinton is immune or resolving these issues against Clinton, removing them from further contention. Rule 74.04(c)(6), (d). These processes, however, were not triggered in the case because the circuit court elected to exclude the affidavit attached to Clinton's motion to dismiss under Rule 55.27(a)(6) because it encompassed matters beyond the pleadings.

Accordingly, I write separately to urge the creation of a rule that would allow for the earliest possible resolution of immunity claims and other threshold legal matters

---

[1] As the principal opinion points out, *slip op.* at 7-8, Clinton's motion to dismiss, no matter how framed, was in substance a motion to dismiss under Rule 55.27(a)(6).

3

having nothing to do with the merits of an action. Because the option to exclude matters outside the pleadings is limited only to motions to dismiss under Rule 55.27(a)(6), Rule 55.27(a) already requires the circuit court to consider such matters when presented in support of motions to dismiss on any other ground, most of which require the movant to put before the court facts unrelated to the merits of the plaintiff's claims and, therefore, not likely to be found in the petition. *See, e.g., Chromalloy Am. Corp. v. Elyria Foundry Co.*, 955 S.W.2d 1, 3 n.3 (Mo. banc 1997) (noting the "[c]onsideration of affidavits supporting a motion to dismiss for lack of personal jurisdiction … is proper" but "the [circuit] court's inquiry is limited to an examination of the petition on its face and the supporting affidavits to determine the limited question of personal jurisdiction"), *overruled on other grounds by State ex rel. Henderson v. Asel*, 566 S.W.3d 596 (Mo. banc 2019).

One approach would be to delete the language in Rule 55.27(a) giving the circuit court discretion to exclude matters outside the pleading for all motions to dismiss under Rule 55.27(a)(6). This is likely overbroad, however, as there are many grounds for a motion to dismiss under Rule 55.27(a)(6) requiring matters outside the pleadings that, nevertheless, are so closely related to the merits of the plaintiff's claims there is no efficiency to be gained in resolving them early and certainly no imperative to do so as with claims of immunity or lack of personal jurisdiction.

Instead, the answer would seem to be: (a) to define a class of motions involving threshold legal matters such as immunity claims that have nothing to do with the merits of an action but that often require a factual basis unlikely to be asserted in the petition;

4

and (b) to craft a rule allowing for the earliest disposition of those motions by permitting the circuit court to oversee limited discovery concerning those matters and then rule upon the matters either when the relevant facts are undisputed or, if disputed, after resolving those disputes in a hearing on the record.

The purpose of this Court's rules of civil procedure is "to provide for just determination in every civil proceeding." *Associated Grocers' Co. v. Crowe*, 389 S.W.2d 395, 399 (Mo. App. 1965); *see also* Rule 41.03 (noting the civil rules "shall be construed to secure the just, speedy and inexpensive determination of every action"). Rule 55.27(a) falls short of these lofty goals in cases presenting threshold matters such as Clinton's claims of immunity. That shortcoming, however, is fixable, and I write separately in hopes this Court will take the opportunity to do so.


_____
Paul C. Wilson, Judge